IN THE
UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

UNITED STATES OF AMERICA      )
                              )
            v.                )    Criminal No. 5:12CR00026
                              )
JAMES ROBERT COBLER           )

GOVERNMENT'S MEMORANDUM IN SUPPORT OF SENTENCING

Defendant, James Robert Cobler, faces sentencing after pleading guilty before this Court On June 21, 2012, to three counts of using a four year old boy to engage in sexually explicit conduct for the purpose of creating visual depictions of that conduct (commonly referred to as production of child pornography)in violation of 18 U.S.C. §§ 2251(a) and (e); one count of transportation of child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1); and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). He faces a statutory minimum of 15 years of imprisonment up to a maximum of 1440 months (120 years), to be followed by a period of supervised release between five years and life.[1]  He also faces a potential fine as well as forfeiture of various items (as set forth

---

[1]  The Guidelines recommend lifetime supervison for sex offense convictions.  See U.S.S.G. 5D1.2(b)(Policy Statement).

in the Indictment),[2] including his computer equipment and the camera he used to record his young male victim. The defendant's Sentencing Guidelines range is calculated as life, capped by the statutory maximum and thus the "range" is simply 1440 months.

In light of the defendant's heinous and risky conduct, especially concerning the molestation of a very young boy knowing that he (the defendant) had a dangerous communicable disease, the United States rerespectfully requests that this Court sentence the defendant to a sentence in accordance with the Guidelines calculations as set forth more fully below.

<u>FACTUAL BACKGROUND</u>

Defendant, who has been diagnosed with a significant communicable medical condition, as further described in the Presentence Report (PSR) engaged in multiple acts of molestation with a four-year old boy and produced video and images of child pornography depicting acts of oral sex and digital penetration of the boy as well as images focused on the young child's genital area. He also distributed and received other hard core child pornography by using a file sharing program by which he obtained other child pornography for his own gratification.

The investigation began on April 20, 2012, when an Internet Crimes Against Children (ICAC) investigator, operating in an

---

[2] The Government intends to return any property determined to neither have been used in the commission of the crime nor used to store contraband.

2

undercover capacity,downloaded child pornography from the defendant's collection. One of the images the investigator downloaded was named "(pthc lolifuck)4 yr blowjob 2-10.jpg.[3]" This image depicted a young girl holding an adult male penis and with her mouth on the penis. PSR ¶3.

Images found on the defendant's computer during a preview search at his home on May 3, 2012, during the execution of a search warrant that day, included significant disturbing child pornography, including images depicting very young children such as toddlers being vaginally and anally raped by adult men. PSR ¶4.

Investigators Galbreath and Wagoner taped an interview of the defendant while they were at his home. See PSR ¶¶5-7.[4] Besides admitting that he acquired child pornography using peer-to-peer software and admitting that he became aroused and would masturbate when he looked at some images of child pornography,[5] he stated that he preferred pictures of males depicting "blow jobs" or "penis in the buttocks." He thereafter described prior incidents when he (the defendant) was 12 years old involving another boy, whom he claimed

---

[3] "pthc" stands for pre-teen hard core and is a commonly used child pornography term; "lolita" and "loli" are also commonly used child pornography terms.

[4] A copy of the interview will be filed under seal because of personal information that would reveal information about a minor victim in violation of 18 U.S.C. 3509(d) as well as certain medical information about the defendant.

[5] He originally suggested he disliked all pornography and was interested in creating a virus to destroy online pornography.

was about five or six years younger, engaged with the defendant in
what he described as a sex game wherein he lay on top of the young
child and "basically, it's like, uh, penis in the butt but not, uh,
nothin' goes into the butt;" admitted he did this on four or five
occasions with this child; and stated that the other boy did the
same to the defendant.  The defendant stated that he got caught by
a babysitter performing oral sex on the younger child.  Transcript
of Interview, pp. 38-42.

    After admitting these earlier sexual acts, and then denying
further sexual contact with any other minor, the following colloquy
occurred between Investigator Galbreath ("JG") and the defendant
("JC"):

JC:  I think that's the one reason why I've downloaded this stuff
     is to-

JG:  Satisfy your interest, maybe?

JC:  Uh, protect me from the rest of the world.

JG:  Okay.  So-

JC:  So, that way, uh, you know, I'm not doin' it to anyone.  I'm
     not harmin' anyone.

JG:  So you're, you're basically sayin' that, just to make sure I
     understand, that by you downloading the images and using the
     images to-

JC:  Of course I do-

JG:  Let me finish.  Um, masturbate to then you don't have to go
     out and do something in person, is that what you're tryin' to
     say.

JC:  Um, I don't, you know, I don't end up, you know, rapin'
     someone.

<u>Id</u>. at pp. 43-44.  Following the conclusion of the initial interview and around the time the investigators were preparing to leave the premises, the defendant initiated a conversation with the investigators about having molested and filmed in the recent past the local four-year old victim of the offenses charged in Counts one through Three of the Indictment.  He admitted to molesting the child on three or four separate occasions within the prior month when he was babysitting the child at the home of the child's mother.[6]  He stated that during the first incident, he fondled the child's penis but did not film him that day.  He stated that on the second occasion, he gave the boy a "blow job," and made a 45-second video ("the max it can hold") during this second incident.  He also admitted taking one picture of "mostly" the boy or his penis. Defendant stated that on the third occasion, he performed oral sex on the young child and took about nine more pictures, one of which may have depicted the oral sex.  On the final occasion, the defendant again performed oral sex on the child but claimed not to have produced any images.  He claimed, in part, that the victim liked how the oral copulation felt.  <u>See</u> <u>id</u>. at pp. 62-87.

After denying any further types of acts of molestation involving this young child, the defendant admitted penetrating the child's anus "a tiny bit" ("[a]bout a quarter of an inch") with his

---

[6]  He claimed that the incidents all occurred within a week.

finger on each of the occasions that he performed oral sex on the child.  The defendant claimed that he stopped doing this when the child said that this hurt.  The defendant also admitted that he put his tongue on and licked the rim of the child's anus on the final occasion but stopped because the boy did not like it.  Id. at 88-95.

The defendant also admitted researching whether his communicable disease could be transmitted via saliva during oral sex after the first occasion that he put his mouth on the boy's penis.  He claimed that he learned it was either a very small or no chance of transmission unless he had a cut in his mouth and the child had a cut.  After learning there might be a possibility of transmission, he nevertheless performed oral sex on the child the two other times.  Id. at 103-05.

A forensic analysis confirmed that the defendant produced child pornography and had acquired other hard core images depicting the sexual abuse of young children, including penetration of young children by adult men.

<u>PRESENTENCE REPORT</u>

The Presentence Report (PSR) prepared by the Probation Office correctly shows that Counts One and Two are driven by the base offense level 32 for production of child pornography, the tender age of the victim child (+4 levels), the commission of a sexual act as defined in 18 U.S.C. § 2246(2) (+2 levels), and the fact that

6

the young boy was then in the defendant's care or supervisory control (+2 levels), resulting in offense levels of 40 for each of those counts. PSR ¶¶14-29. Count Three was similarly calculated but because that offense did not involve a sexual act or sexual contact, the offense level is 38. PSR ¶¶30-36.

Counts Four and Five (transportation and possession of child pornography) group together with a base offense level of 22, depictions of prepubescent minors (+2 levels); distribution via a Peer-to-Peer network (+5 levels)[7]; depictions of violence because the defendant's collection included young and small children being vaginally and anally raped by adult males (+4 levels); engaging in a pattern of activity involving the sexual abuse or exploitation of a minor as further defined in U.S.S.G. §2G2.2, Application Note 1 (+5 levels); offense involved more than 600 images of child pornography (+5 levels), for a total offense level of 45 for these two charges. PSR ¶¶37-47.

Because production counts do not group, an additional 3 levels are added. *See* PSR §§ 48-50. Subtracting 3 levels for acceptance of responsibility and then finally adding a Chapter 4 enhancement for qualifying as a repeat and dangerous sex offender under

---

[7] Defendant, via an objection made January 29, 2013, to the recently revised PSR, argues that a two-point distribution enhancement and not a five-point enhancement should apply instead. The United States will be conducting further research on this issue and will present same to the Court by the time of the sentencing hearing.

U.S.S.G. §4B1.5(b), there is a final addition of 5 levels, for a final combined offense level of 43.  See PSR §§ 52-56.

Based upon a Criminal History Category I and total offense level 43[8], defendant's advisory sentencing guideline term of imprisonment is life.  Because the statutory maximum on each count is less than the advisory guidelines range of life imprisonment, the aggregated statutory maximum sentences on each count becomes the advisory guidelines range for each count, i.e., 30 years on each of Counts One, Two, and Three, 20 years on Count Four, and 10 years on Count Five.  See U.S.S.G. §5G1.1(a).

Further, U.S.S.G. §5G1.2(d) provides that the statutory maximum sentences shall run consecutively:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.

U.S.S.G. §5G1.2(d).  The "total punishment" under the sentencing guidelines in this case calls for life imprisonment.  Because the aggregated statutory maximum sentences is less than the total guidelines punishment of life imprisonment, the sentences for the multiple counts should be run consecutively as the advisory guideline sentence.  See United States v. Schellenberger, 246

---

[8]  Defendant's actual total offense level is 50, but because 43 is the maximum potential offense level under the Guidelines, it is reduced to level 43 pursuant to U.S.S.G. Ch. 5, Pt. A, cmt. n.3.

Fed.Appx. 830, 833 (4th Cir. 2007)(unpublished)("the guidelines instruct that if the total punshment mandated by the guidelines exceeds the highest statutory maximum, the district court must impose consecutive terms of imprisonment to the extent necessary to achieve the total punishment")(citation and internal quotations omitted). Accordingly, the PSR correctly states that defendant's advisory guideline range is 1,440 months (i.e., 30+30+30+20+10 = 120 years).

A sentence called for by the sentencing guidelines (effectively a life sentence) would be reasonable under the circumstances in this case and meet the goals of 18 U.S.C. § 3553(a), in particular, based on the following factors:

<u>UNITED STATES' SENTENCING POSITION</u>

<u>Nature and Circumstances of the Offense and the History and Characteristics of the Defendant</u>

The production offenses in this case are especially despicable and egregious given the defendant's extraordinarily selfish exploitation of a very young child during which he risked transmitting to the child a potentially life-threatening condition. Indeed, despite his knowledge concerning his own medical situation, the defendant chose to put his own interests above that of a highly vulnerable child, who was then in his custody and control. Simply stated, the defendant has demonstrated that he will stop at nothing to satisfy his own urges and interests. His viewing and distribution of other vile images of young children being molested

9

- offenses characterized as crimes of violence in and of themselves - were insufficient to satisfy his deviant sexual interests.

While defendant has no known criminal history in the sense that he has no prior prosecutions, he has an undeniable longstanding interest in the sexual abuse of young children. Besides the more recent molestations that resulted in some of the offenses of conviction in this case, the defendant also admitted during his interview that he had engaged in prior sexual acts with a young child (about half his age) when he was a minor himself. Moreover, the defendant's own statements suggest that he downloaded child pornography in an attempt to avoid raping a child. Even if he truthfully stated his intention, he obviously chose to personally exploit a young child. The fact that he even offered babysitting services is additionally disturbing given his history of being sexually attracted to young children.

<u>The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment</u>

As set forth above, the conduct by the defendant is especially reprehensible and there is nothing in his far-reaching conduct that would suggest that any type of variance should be considered. The risk that the defendant took in abusing this young child when he was entrusted with caring for him cannot justify any sort of downward variance as this conduct should be deemed to be on the more serious side of the offense charged. A variance would promote

10

a lack of respect for the law.  Moreover, the effects on the four-year old victim were significant as set forth in the victim questionnaire submitted by the child's mother.  As set forth in that document, the defendant's conduct has affected the child's behavior and adversely affected his family in various ways.

### The Need to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant

The sentence in this case must constitute a loud message to other offenders that the most extreme consequences will result for such callous disregard of young victims.  Given the defendant's overall conduct, which includes deviant sexual behavior against at least one other young child that began when he was still a minor, a Guidelines sentence is wholly appropriate.  As stated above, the defendant's own statements and actions suggest that he is simply unable to control his urges and behavior.

Although he has no criminal history (like almost all of the child pornography defendants who have previously come before this Court), the defendant has harmed numerous children (in both producing his own child pornography and in searching for and distributing other child pornography) and poses a future danger to them, and his sentence should address both the seriousness of his offenses and his future dangerousness.  A long term of imprisonment, such as one that guarantees that he will remain incarcerated for the duration of his life, also reflects the seriousness of the offense, promotes respect for the law, and

provides just punishment.  Lifetime supervised release (if he is released from imprisonment) will help to prevent future harm by the defendant.

Likewise, the sentence needs to afford adequate general deterrence.  This would be true even if the defendant had not personally violated a child.  Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence.  See, e.g., United States v. Irey, 612 F.3d 1160, 1206 (11th Cir. 2010) (citing United States v. Ferber, 458 U.S. 747, 760 (1982)) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product");[9] Osborne v. Ohio, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); United States v. Goff, 501 F.3d 250, 261 (3rd Cir. 2007) ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); United States v. Barevich, 445 F.3d 956, 959 (7th Cir. 2006)

---

[9]   The Irey court noted that "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses."  612 F.3d at 1206.

("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it."). In United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007), the Seventh Circuit opined that:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded – both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

The Sixth Circuit in part reversed a district court when the district court failed to see any importance in general deterrence. See United States v. Bistline, 665 F.3d 758, 767 (6th Cir. 2012).[10] The district court had stated, "general deterrence ... will have little [if] anything to do with this particular case." Id. The Sixth Circuit found the district court's statement "inexplicable and in any event conflicts with our statement that 'general deterrence is crucial in the child pornography context[.]'" Id. (citing United States v. Camiscione, 591 F.3d 823, 834 (6th Cir. 2010)).

---

[10] While Bistline reversed an extremely short sentence, the opinion is a strongly worded opinion about the Guidelines and the seriousness of child pornography offenses.

<u>The Need to Avoid Unwarranted Disparities</u>

As will be further set forth below, many child pornography producers have received Guidelines and/or lengthy sentences that have been affirmed on appeal. The Guidelines understandably calculate long advisory sentences for people like the defendant because they have directly harmed children (and because of the prescribed goals of sentencing). A Guidelines sentence, as constrained, of course, by the statutory maximum in this case, would be a reasonable sentence and would reflect the seriousness of the defendant's offenses, promote respect for the law, deter future conduct, reflect the seriousness of the offense and provide the public with protection from future crimes. Such a sentence would be sufficient but not greater than necessary to punish the defendant for his conduct, promote respect for the law, address the seriousness of his offenses and would accurately reflect all other sentencing factors.

There are numerous examples of sentences that have involved long and/or effectively life sentences for production of child pornography. For example, in <u>United States v. Sarras</u>, 575 F.3d 1191 (2009), the Eleventh Circuit affirmed as reasonable a 100-year (1,200 months) sentence for a first-time offender who sexually abused a 13-year-old girl and produced pornographic images of the victim. <u>Id</u>. at 1220-21. The <u>Sarras</u> court noted several other child exploitation cases in which courts upheld lengthy sentences

14

as substantively reasonable. Id. See United States v. Johnson, 451 F.3d 1239, 1244 (11th Cir. 2006) (upholding as reasonable a 140-year sentence for abusing and photographing three boys between the ages of 8 and 16 based on consecutive statutory maximums under 18 U.S.C. § 2251(e) and § 2252A(b)(1)); United States v. Kapordelis, 569 F.3d 1291, 1318-19 (upholding as reasonable a 420-month sentence, which represented an upward variance from the 262-327-month advisory guidelines range and included 240-month sentences on counts charging production of child pornography under § 2251(a) and 180-month consecutive sentences on counts charging receipt of child pornography under § 2252A(a)(2)(A)); United States v. Huffstatler, 561 F.3d 694, 698 (7th Cir. 2009) (upholding as reasonable an above-guidelines, 450-month sentence for producing pornographic pictures of a 14-year-old boy); United States v. Raplinger, 555 F.3d 687, 695 (8th Cir. 2009) (upholding as reasonable a 457-month sentence for photographing and having sexual intercourse with a 15-year-old girl), cert. denied, 129 S.Ct. 2814 (2009); United States v. Betcher, 534 F.3d 820, 827-28 (8th Cir. 2008) (upholding as reasonable a 750-year sentence for a first-time offender who had taken pornographic pictures of five 8- to 11-year-old girls, including two of his granddaughters), cert. denied, 129 S.Ct. 962 (2009); United States v. Vowell, 516 F.3d 503, 511-13 (6th Cir. 2008) (upholding as reasonable a 780-month sentence for a 40-year-old man who had sexual intercourse with his

girlfriend's 8-year-old daughter while being videotaped by his girlfriend); see also United States v. Paton, 535 F.3d 829, 837-38 (8th Cir. 2008) (concluding that life sentence for five counts of production of child pornography was not cruel and unusual punishment in violation of the Eighth Amendment); United States v. Pugh, 515 F.3d 1179, 1202 ("[W]e have typically treated child sex offenses as serious crimes, upholding severe sentences in these cases").

Closer to home the Fourth Circuit has affirmed, *inter alia*, the following cases that involved, at least in part, production of child pornography convictions:   United States v. Engle, 676 F.3d 405 (4th Cir. 2012)(affirming 480-month sentence which was the result of an upward variance); United States v. Mattocks, 408 Fed.Appx. 717 (4th Cir. 2011) (unpublished) (affirming 600-month sentence for one count of production of child pornography involving a 6-year old child and one count of transportation of child pornography); United States v. Ebersbach, 2012 WL 1743225 (4th Cir. 2011) (unpublished) (affirming 360-month Guidelines sentence); United States v. Martinez, 453 Fed.Appx. 342 (4th Cir. 2011) (affirming of denial of motion to withdraw guilty plea in case where defendant received 960-month sentence), cert. denied, 132 S.Ct. 1130 (2012).[11]

---

[11]   Two recent cases in this district, United States v. Bruffy, Criminal No. 6:11CR00006 and United States v. Miller, Criminal No. 6:11CR00004 (presently on appeal solely for rulings

As other recent examples, the Seventh Circuit affirmed a 396-month sentence for a 19-year old defendant who captured live-stream images of girls as young as 13 (he distributed at least one photo). The government had recommended a small break in his sentence for assistance and his sentence was below his guidelines range.   See United States v. Shea, 2012 WL 4373430 (7th Cir. 2012)(unpublished). The Eighth Circuit affirmed a 327 month sentence (the maximum potential sentence was 360 months which was reduced to reflect time served as part of a related state sentence) for a defendant's production of images depicting his 11-year old daughter.   See United States v. Schupp, 2012 WL 435 4350766 (8th Cir. 2012) (unpublished).

While each case has unique factors, some aggravating some mitigating, in this case, the defendant's offenses are aggravated and worthy of severe punishment in accordance with many of the examples that are set forth above.   It is difficult to quantify, much less fathom, the harm and tragedy perpetrated on the 4-year

_____

on pretrial motions) resulted in 23-year and 25-year sentences respectively.   In Bruffy, the children were unaware that their images (which depicted primarily lascivious exhibition of the genitals and not sex acts between Bruffy and the minors) were taken since they were asleep for those images that clearly qualified as child pornography.   Miller, who was significantly older and also had health problems (indeed, he was arrested on a warrant from our district) in Rome after he had a heart attack) had filmed an approximately 14 or 15 year old girl performing oral sex on the defendant.   The crimes were discovered after the girl had asked the defendant to take her away with him and they were found driving in the National Park.

old child victim (and the victim's mother) by the defendant, and it is impossible to predict its long-term effects on the child victim. The defendant's callous and selfish disregard for the life and health of the child cannot be understated in this case.  Defendant supplemented these horrific acts by downloading and collecting many graphic images and videos of other young children being raped and abused, including images similar in nature to the abuse he perpetrated on his local victim.  Accordingly, the United States respectfully requests that, after considering the facts and circumstances of this case, the relevant guidelines, and the factors set forth in 18 U.S.C. § 3553(a), this Court sentence defendant in accordance with the Guidelines (and lifetime supervision should he be released from prison at some point).  As set forth above, such a sentence would be substantively reasonable, serve the goals of general and specific deterrence, protect the public from future crimes by defendant by achieving his incapacitation, and afford justice to the child victim.

It bears noting that even if he had not engaged in contact offenses with a minor (and produced images of that conduct), the defendant's other child pornography activities demonstrate a danger to children as well.  As explained by the Fifth Circuit:

> ...we have numerous victims in a case like this, not one victim.  Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child.  Without a demand for that type of information and that type of viewing from persons

like this defendant, we don't know how many child abuse cases
we could prevent.  And as long as there is a demand to
purchase images of child pornography, there is going to be an
unending stream of child abuse of . . . children who are
forced into these roles.

...every image has a child who has been exploited and
abused, and that is the concern I have.  It is the
concern that I have when people are engaged in serially
doing this, the effect it has on children throughout the
world and the effect it has on their future lives.

See United States v. Miller, 665 F.3d 114, 121-122 (5th Cir. 2011)

(quoting the district court), cert. denied, 132 S.Ct. 2773

(2012)(rejecting an attack on the child pornography sentencing

guidelines[12] and highlighting the grave harm caused to the victims

depicted in child pornography images and the evidence that

traffickers and possessors of child pornography are the impetus for

---

[12]   This Court is undoubtedly aware that U.S.S.G. § 2G2.2,
the Guideline used for most non-production offenses has been a
recent favorite target of the defense bar.  However, it is
important to note that the Fourth Circuit has not adopted – and
has indeed rejected – the view that the child pornography
guidelines are not worthy of a presumption of reasonableness
because they were developed pursuant to congressional dictates.
Indeed, in fairly recently affirming a Guidelines sentence, the
Fourth Circuit stated:

    Strieper first contends that a presumption of
    reasonableness should not apply to sentences for child
    pornography offenses because the relevant Guideline was
    developed pursuant to congressional dictates rather
    than the Sentencing Commission's expertise.  We have
    previously rejected this view, however, and instructed
    courts "to give respectful attention to Congress'[s]
    view that [child pornography crimes] are serious
    offenses deserving serious sanctions."

United States v. Strieper, 666 F.3d 288 (4th Cir. 2012)(citing
and quoting from Morace, 594 F.3d at 347 (4th Cir.)(internal
brackets in original).

the creation of more sexual abuse of minors).

In finding the district court's observations sound and relevant, the Fifth Circuit stated:

> The district court in this case was cognizant of the undeniable fact that real children are actually being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by Miller and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way.  If a handful of pornographic images taken twenty years ago were sufficient to satisfy the perverse desires of those who possess and traffic in child pornography, we would not have the huge industry that exists internationally today.  No other child would be raped or sodomized or otherwise violated to produce pornographic images.  Tragically, the reality is that there is a huge demand for "fresh" faces and images.

Id. at 123 (emphasis added).  In the present case, the defendant is of course charged with not only being a consumer and distributor of previously produced images of child sexual abuse but also with producing his own child pornography, using a very young child to stoke his perverse sexual interests and choosing to memorialize the abuse.   He is a sexual predator and should be sentenced accordingly.

Regarding his non-self produced collection, it is noteworthy that many qualify as depictions of violence and also depict very young children.  "An offender's pornography and erotica collection is the single best indicator of what he wants to do."  KENNETH V. LANNING, OFFICE OF JUVENILE JUSTICE AND DELINQUENCY PREVENTION, CHILD MOLESTERS: A BEHAVIORAL ANALYSIS—FOR PROFESSIONALS INVESTIGATING THE SEXUAL EXPLOITATION OF

20

CHILDREN, 107 (5TH ED. 2010).  As the <u>Miller</u> court stated:

> We also disagree that it is "illogical to differentiate
> between defendants who view or distribute images of
> prepubescent children being raped and sodomized, as one
> example under the Guidelines, and those defendants who
> view or distribute pornography that depicts minors who
> are not prepubescent engaged in sexual activity that is
> not violent or sadistic.  We reject the view that because
> there are many defendants who view images of children
> under the age of 12 being raped and sodomized, and
> because there are many defendants who obtain hundreds of
> pornographic images of children, the terms of
> imprisonment should be reduced for all who receive or
> transport child pornography, regardless of the content of
> those images and regardless of the number of images.  The
> Guidelines treat differing behavior differently, and in
> our view, that differentiation is not unreasonable.

665 F.3d at 123.  <u>See also</u> <u>United States v. Clogston</u>, 662 F.3d 588,

593 (1st Cir. 2011); ("Given the numerous images of very young

girls in the appellant's possession, the [district] court was

entitled to ponder, and to pass informed judgment on, questions

such as whether he could conform his future actions to the norms of

society and whether he posed a risk to young girls."); <u>United</u>

<u>States v. Aumais</u>, 656 F.3d 147, 157 (2d Cir. 2011) ("[G]iven the

violent nature of the images, the number of them, and other

considerations,... [t]he sentence is substantively reasonable.");

<u>United States v. Cunningham</u>, 2012 WL 593110 (6th Cir. Feb. 24,

2012); (affirming sentence where district judge reviewed all of the

images to judge the defendant's conduct, and considered, as  "the

nature of those images, the age of the children, [and] the conduct

depicted in the images" along with the other 3553 factors).

    For the reasons set forth above, the United States' position

is that a Guidelines sentence in this case should be imposed based
on the seriousness and breadth of the defendant's offenses.

### Sentencing Exhibits and Testimony

As stated above, the United States intends to submit to this
Court, under seal, a copy of the transcript of the recorded
interview of the defendant on the day of his arrest.  The United
States also intends to present to this Court a sampling of images
that were recovered during the investigation.  The United States
reserves the right to present testimony, other exhibits, and a
supplemental filing in response to any memoranda or exhibits that
the defendant files or chooses to introduce in furtherance of
sentencing.

### Notice of Specific Sex Offender Conditions to be Imposed is Not Required at Time Guilty Plea is Entered

The Court has filed a written Order stating that the Court
believes that the defendant should be provided with notice of the
special supervised release conditions that may be imposed prior to
accepting the guilty pleas.  As will be discussed further at the
sentencing hearing, the United States is aware of no requirement
that the defendant be advised of specific potential supervised
release conditions prior to entry of a guilty plea.   The
requirements set forth under Rule 11 do not contain any requirement
that a defendant be so advised and states simply, in relevant part,
that the defendant be advised of "the maximum possible penalty,
including imprisonment, fine, and term of supervised release" as

22

well as "any mandatory minimum penalty."  <u>See</u> Fed. R. Crim. P. 11(b)(1)(H) and (I).  To add a requirement that a defendant be advised of the potential special conditions (a requirement neither set forth in the Federal Rules of Criminal Procedure nor set forth in case law) might result in setting a precedent for the inclusion of other warnings or information that are also not legally required.  Moreover, questions might also arise as to whether a defendant should also then be allowed to withdraw a plea in the future if the is a subsequent modification of conditions (i.e., post-sentencing).

                                        Respectfully submitted,

                                        TIMOTHY J. HEAPHY
                                        UNITED STATES ATTORNEY


                                        <u>s/ Nancy S. Healey</u>
                                        Nancy S. Healey
                                        Assistant United States Attorney
                                        Virginia Bar No. 39447

CERTIFICATE

I hereby certify that on 30th day of January 2013, the forgoing Sentencing Memorandum was electronically filed using CM/ECF system. This system will send notification of such filing to all parties.

_/s/Nancy S. Healey_____
Nancy S. Healey
Assistant United States Attorney
