```
                        IN THE
             UNITED STATES DISTRICT COURT
                       FOR THE
             WESTERN DISTRICT OF VIRGINIA
                 HARRISONBURG DIVISION

UNITED STATES OF AMERICA      )
                              )
          v.                  )  Criminal No. 5:12CR00026
                              )
JAMES ROBERT COBLER           )
```

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

COMES NOW the United States of America, by undersigned counsel and submits the following in response to certain arguments made by the defendant in his memorandum. Understanding that the defendant's memorandum is under seal, the United States will avoid commenting about matters underlying the sealing of that memorandum that have not already been placed in the public record. There are, however, statements made therein that justify this response.

Preliminarily, it is unquestionable that the defendant has faced, in large part, a set of unfortunate circumstances through no fault of his own and the undersigned is very sorry about this reality. Thankfully, the defendant was cared for by his grandparents who apparently provided him with a good home and a nurturing environment.

The defendant's regrettable situation, however, does not in any way excuse the defendant's actions against a young, helpless child whom he was entrusted to take care of during the defendant's acts of molestation. The defendant engaged in this behavior on

multiple occasions despite his awareness of certain potential risks involved.

Whether or not the defendant's offenses constitute "crimes of opportunity," this was a reprehensible and dangerous crime.  The very fact that he even molested a child who was only four-years old is deplorable in and of itself.  Moreover, the purported mitigating excuse of a "crime of opportunity" seems to be worthy of little, if any, consideration given his collection of other vile images of young children being raped and molested (and certain statements he made on the day of his arrest) which demonstrate a clear sexual interest in young children.  Indeed, perhaps the only mitigating factor in this case is the absence of evidence that the defendant distributed the child pornography that he produced.

Regarding any suggestion that his discovery of child pornography was inadvertent or that he disliked sadomasochistic child pornography, the forensic analysis of his laptop computer revealed not only his use of numerous search terms consistent with searches for child pornography depicting very young children, including children the same age as (and even younger than) his contact victim, but also his use of terms consistent with searches for hard core child pornography and searches that one would expect to result in the receipt of images depicting sadistic acts.[1]

Notably, the defendant had some proficiency in computers and

---

[1] The United States intends to introduce a document setting forth search terms used by the defendant.

computer programs, including a relevant degree (as noted by USPO Mike Sheffield in response to the defendant's objection to a five vs. two point enhancement for distribution). As the transcript of interview previously submitted to the Court reveals, when he was interviewed by the investigators, the defendant discussed his computer knowledge and his use of peer-to-peer programs. While claiming that he did not intend to share his files, he stated "... I probably should've ... after downloading it, moved to a different folder so it's not constantly being shared" although he thought it was going to a default folder. See Transcript of Interview at pp. 16-17. He further claimed he did not like to share his folder but acknowledged that he was but meant to turn off sharing; he also talked about the types of search terms he claimed to have used, including "rape" and "sex" and "little." Id. at 20; 26-29. He repeated his denial of his intent to share and claimed that he tried to stop certain downloading from him.

Regarding the defendant's contact offenses, the defendant admitted that he researched the risk that his sexual acts with the child might pose stating that "after the first time, I was concerned because I realized what I did and I was hopin' that would have been the only day that I snapped and did somethin' like that." Id. at 104. He proceeded to engage in similar acts thereafter.

> The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment

As set forth previously, the conduct by the defendant is

especially reprehensible and created a risk of further physical harm (in addition to the harm described in the victim impact statement submitted by the mother).  While the defendant seeks to convince this Court that a lesser sentence than what the Guidelines advise should be sufficient but not greater than necessary, the sentence in this case must reflect the seriousness of his offenses, promote respect for the law, and to provide just punishment.  A Guidelines sentence is warranted in this case even though such a sentence is tantamount to a life sentence.

The goals set forth under 18 U.S.C. § 3553(a)(2)(A) embodies the "just desserts" concept and "carries the need for retribution, the need to make the punishment fit the crime, and the need not just to punish but to punish justly." United States v. Irey, 612 F.3d 1160, 1206 (11th Cir. 2010)(en banc).  A longer sentence is warranted the more serious the conduct.  See id.  The Eleventh Circuit further noted that the less it takes to have the statutory minimum imposed, the hight the sentence should be for much worse conduct.  Id. at 1209.  A single image depicting the lascivious exhibition of a 17-year old minor would require a 15-year sentence. The present case of course involves much more serious conduct and thus should result in a much more serious sentence - one that would be sufficient to meet the goals of sentencing, including justly punishing the defendant considering the scope of his conduct.

<u>The Need for the Sentence to Accord General and Specific Deterrence</u>[2]

The more serious the crime, "the more important it is to send a strong and clear message that will deter others." <u>Irey</u> at 1212. Regarding any suggestion that counseling and strict supervised release conditions make recidivism unlikely, it should be noted that sex offenders often fail to completer their treatment programs and have high rates of dropping out or expulsion. <u>See</u> <u>id</u>. at 1215. Moreover the Supreme Court has found that sex offenders are much more likely than any other type of offender to be rearrested for rape or sexual assault. <u>See</u> <u>id</u>. (citations omitted).

<u>The Need to Avoid Unwarranted Disparities</u>

In its prior submission, the United States set forth examples of sentences consistent with the sentence the United States believes is merited in this case. Two other examples of significant sentences in this district include <u>United States v.</u>

---

[2] Regarding the deterrence article attached to the defendant's sentencing memorandum, it should be noted that the article appears to have little, if any, application in the context of sentencing sex offenders who are known to be a recidivism risk. The article discusses, among other things, the fact that half of the state prisoners were under the influence of drugs or alcohol at the time of their arrests and thus are unlikely to be deterred by the certainty *or* severity of punishment. Further noted are observations and studies relating to: 1) much less serious offenses than sex offenses; comparisons of 2.5 year sentences to 1-year sentences (clearly inapplicable in this case); and 3) research allegedly showing that "lower-risk offenders" being "more negatively affected by incarceration." Regarding the observation that "in order for sanctions to deter, potential offenders must be aware of sanction risks and consequences," many sex offenders are educated and well aware of the illegality and potential consequences of their crimes.

Young, Criminal No. 1:09CR00023 (420 months) and United States v. Gibson, Criminal No. 1:06CR53 (540 months).

Regarding the two cases cited by the defendant in his memorandum, United States v. Crandon, 173 F.3d 122 (3d Cir. 1999) and United States v. Irey, *supra*, the United States notes the following:

The offenses in the Crandon case occurred in 1996. At that time, production of child pornography carried no mandatory minimum sentence and was punished by up to 10 years of imprisonment. Likewise, receipt of child pornography, the offense for which Crandon was convicted, carried the same statutory penalty. (The Child Pornography Prevention Act of 1996 changed the penalty for production to a range of imprisonment between 10 and 20 years. The statutory maximum penalty for receipt was increased to 15 years but there was still no mandatory minimum sentence). The Guidelines were also lower for these offenses in 1996. The base offense level for an offense calculated under U.S.S.G. §2G2.1, as set forth in the Sentencing Guidelines Manual (and effective November 1995) set forth a base offense level of 25; a two-level enhancement if the victim was between 12 and 16-years old (as was the Crandon victim) and a two-level increase if the victim was in the care or custody of the defendant (likely inapplicable in the Crandon case). Thus, it appears that the sentence imposed in that case may well have been within the Guidelines range. However, while that case also involved the repeated exploitation of a minor, the facts in Crandon

are distinguishable.  Among other things, the victim in that case was, at age 14, significantly older than the vulnerable 4-year old in the present case.  Plus, there is no mention in the Crandon case of any medical risk to the victim.

Regarding the Irey case, the defendant, who also engaged in repeated, unthinkable, and reprehensible conduct was charged in a single count, the maximum sentence for which was 30 years.  The Eleventh Circuit, sitting *en banc*, made clear its strong disagreement with the district court's original sentence, finding that "no downward variance ... is reasonable in this case."  612 F.3d at 1222.  Indeed, a reading of the opinion as a whole leaves the impression that the Eleventh Circuit may well have thought a higher sentence than that allowed by the statutory maximum in that case would have been warranted.  Defendant Irey was apparently 50-years old at the time of his sentencing and the opinion makes clear that his advanced age at the time of release did not justify a shorter sentence.

Finally, it should be noted that the Federal Public Defender routinely points out during sentencing proceedings any downward variances imposed or leniency accorded in child pornography cases in an attempt to justify variances in other cases.  Each case must of course be evaluated on its own merits but it is important for a case involving especially egregious conduct to receive a sentence that acknowledges the scope of this conduct.

<u>Defendant's Other Child Pornography Crimes Justify a Significant Sentence</u>.

As set forth in the United States' first sentencing memorandum, the non-production crimes with which the defendant is charged should also demand a substantial sentence. The Fourth Circuit has not rejected the validity of the Guideline used to calculate non-production offenses. Indeed, the Fourth Circuit has noted that Congress views child pornography offenses as "serious offenses deserving serious sanctions." See <u>United States v. Morace</u>, 594 F.3d 340, 347 (4th Cir. 2010), *cert. denied,* 131 S.Ct. 307 (2010). Victims depicted in the defendant's images have suffered abuse and trauma not only from the perpetrators of the actual abuse but also by the knowledge and fact that people like the defendant sexually enjoy images of these children during their worst moments. The victims and their parents continue to feel the pain associated with the prior abuse as well as the knowledge that their images are being widely traded. They believe that child pornography traffickers should be held fully accountable. The victim impact statements that were prepared by the children and/or family members for some of the series of images with identified victims that were collected by the defendant drive this point home. The images he downloaded and made available for others to download are not "just pictures." Rather, each depicts a horrific crime scene which has been memorialized and shared by people like the defendant who are sexually aroused by children being molested and traumatized.

Distribution Enhancement

Defendant agrees that his conduct qualifies for a distribution enhancement under the Guidelines but states that the two-point default distribution enhancement should be applied. Section 2G2.2(b)(3)(B) provides for a five-level enhancement where an offense of receipt of child pornography involves "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." U.S.S.G. § 2G2.2(b)(3)(B). The phrase "distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain" means "any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit." Id. "Thing of value" means "anything of valuable consideration." Id. The commentary firmly establishes that "in a case involving the bartering of child pornographic material, the 'thing of value' is the child pornographic material received in exchange for other child pornographic material ...." Id.

The cases discussing this particular enhancement almost always arise where, as here, the defendant used a file-sharing system such as Limewire to obtain child pornography. See,e.g., United States v. Griffin, 482 F.3d 1008, 1011 (8th Cir. 2007) (defendant used peer-to-peer file sharing system Kazaa); United States v. Ultsch, 578 F.3d 827, 829-30 (8th Cir. 2009) (defendant used peer-to-peer filing sharing system Limewire); United States v. Geiner, 498 F.3d 1104, 1111 (10th Cir. 2007) (defendant used peer-to-peer file

sharing system).

Various courts, including the Courts of Appeals in the Eighth Circuit, Tenth Circuit and the Eleventh Circuit have issued numerous opinions analyzing this particular distribution enhancement. See, e.g., Griffin, 482 F.3d at 1011; Ultsch, 578 F.3d at 829-30; Geiner, 498 F.3d at 1111; United States v. Mcelroy, 2009 WL 3807157, *2 (11th Cir. Nov. 16, 2009). In general, the cases uniformly conclude that whether a defendant qualifies for the five-level enhancement "must be decided on a case-by-case basis, with the government bearing the burden of proving that the defendant 'expected to receive a thing of value – child pornography – when he used the file-sharing network to distribute and access child pornography files.'" United States v. Stults, 575 F.3d 834, 849 (8th Cir. 2009); United States v. Bastian, 603 F.3d 460, 466 (8th Cir. 2010); see also Geiner, 498 F.3d at 1111 (concluding that "whether a defendant distributes files containing child pornography *for* the receipt, or expectation of receipt, of other files available on the network is a question of fact properly resolved on a case-by-case basis by the sentencing court."). A review of the Eighth Circuit cases shows that that court has generously upheld the five-point enhancement but has found the enhancement not to be applicable in situations where a defendant did not download the program or there was little evidence of knowledge of how a peer-to-peer program worked. See United States v. Durham, 618 F.3d 921 (8th Cir. 2010). The Tenth Circuit in Geiner, *supra*, found appropriate

a five-level enhancement based on the expectation of faster downloads but not based on expectation of more child pornography. The Eleventh Circuit, citing <u>Durham</u> and <u>Geiner</u> concluded that knowledge that other users could access a defendant's files was insufficient to show that use of a share feature was done with the expectation of receiving child pornography. <u>See</u> <u>United States v. Vadnais</u>, 667 F.3d 1206, 1209-10 (11th Cir. 2012); <u>see also</u> <u>United States v. Spriggs</u>, 666 F.3d 1284, 1287-89 (11th Cir. 2012) (acknowledging Eighth Circuit's different view); <u>but cf.</u> <u>United States v. Cote</u>, 482 Fed.Appx. 373 (11th Cir. 2011)(unpublished) and <u>United States v. Bailey</u>, 2012 WL 5199249 (11th Cir. 2012) (unpublished)(both finding, in Gigatribe cases, that no explicit *quid pro quo* required). As set forth more fully below, the Fourth Circuit has endorsed the view taken by the Eighth Circuit.

The Eighth Circuit noted that the government can establish a defendant's expectation to receive things of value in two ways:

> The government can meet its burden with direct evidence, such as an admission by the defendant that he knew he was using a file-sharing network, and could download files from others who could download files from him. The government can also meet its burden with indirect evidence such as the defendant's technical sophistication in computers, inferring that he knew that by using a filesharing network, he could download files from others who could also access his files.

<u>Bastian</u>, 603 F.3d at 466. In the instant case, it is undisputed that the defendant used a peer-to-peer program to distribute and receive images of child pornography. Further, the defendant admitted using ARES (and that he previously used LimeWire), and

admitted knowing that he was sharing files, even though he suggested that he did not intend to do so.  He also acknowledged having a computer degree and would thus be expected to have some sophistication in the usage of computers and computer programs.

While in this case, the defendant faces the identical guidelines range whether this Court applies a five- or two-point enhancement for distribution under 2G2.2(b), the PSR has recommended a five-point enhancement, citing, in its response to a defense objection, United States v. Strieper, 666 F.3d 288 (4th Cir. 2012).  In Strieper, the Fourth Circuit affirmed, under a plain error analysis, the application of a five-point enhancement.  In so doing, the Fourth Circuit acknowledged that there was a circuit split but found that a district court does not commit plain error by following another circuit's reasoning.  Id. at 295.  The Fourth Circuit acknowledged that a prior holding United States v. Layton, 564 F.3d 330, cert. denied, 130 S.Ct. 290 (2009) had affirmed the application of the two-level enhancement but stated that it had "yet to address whether a district court may appropriately apply a five-level enhancement for sharing files through [a Peer-to-Peer] network."  Id.  There is nothing set forth in the Layton case, which involved a conviction for possession of child pornography, that suggests that a five-point enhancement was proposed.  The district court in Strieper adopted the Eighth Circuit's approach.  (Notably, the Layton court cited Griffin too).

In light of the above, it seems apparent that while cases have diverged on this issue, the Fourth Circuit appears to allow for a five-level enhancement in facts similar to those found in the present case.

                                      Respectfully submitted,

                                      /s/Nancy S. Healey
                                      Nancy S. Healey
                                      Assistant United States Attorney

### CERTIFICATE

I hereby certify that on 11th day of February 2013, the forgoing Government's Supplemental Sentencing Memorandum was electronically filed using CM/ECF system. This system will send notification of such filing to Joel Hoppe, Counsel for the defendant.

                                      /s/Nancy S. Healey